IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CITIZENS IN CHARGE, et al.
    Plaintiffs,

v.

JENNIFER BRUNNER, in her official
capacity as Ohio Secretary of State, et al.
    Defendants.

Case No. 2:10-cv-95

JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

Plaintiffs seek to place on the November 2, 2010 Ohio ballot a referendum, which seeks to overturn a plan to authorize the placement of slot machines in racetracks throughout the state. Before the Court for consideration is Plaintiffs' application for a temporary restraining order seeking to enjoin Defendants from (1) enforcing Ohio Revised Code § 3517.12(B), which requires Plaintiffs to list all amounts paid to individual circulators of petitions in support of the referendum, and (2) releasing to the public the names and addresses of the individual signers of the petitions.

On February 8, 2010, following oral argument on the application, this Court issued a temporary restraining order enjoining Defendants from enforcing § 3517.12(B). By separate order, this Court denied the Plaintiffs' request for an injunction preventing the release of the names of those who signed the petitions, subject to a ten day stay of such disclosure in order to permit effective appellate review. This Opinion memorializes the reasons given in open court in support of such Order.

I.

The Ohio Constitution reserves to the people the power to adopt or reject any law at the polls on a referendum vote. Oh. Const. Art. II, § 1. Before a referendum may be placed on a statewide ballot, a petition signed by 6% of Ohio electors must be filed with and verified by the Ohio Secretary of State (the "Secretary"). Oh. Const. Art. II, § 1c. While the right to a referendum vote is guaranteed under the Ohio Constitution, Plaintiffs contend that a portion of Ohio law and a policy of the Secretary violate the Constitution of the United States.

Plaintiffs first seek an order enjoining the enforcement of Ohio Revised Code § 3517.12(B), which requires ballot committees to disclose the names and addresses of its paid circulators as well as the amount paid to each circulator. Plaintiffs also ask the Court to enjoin the Secretary from making copies of ballot issue petitions available to the public under Ohio's Public Records Act.

II.

In determining whether a grant of a temporary restraining order or a preliminary injunction is appropriate under Rule 65, a court should consider "(1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (citing *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997)). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Id.*, 569 F.3d at 265 (citing *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). *See also Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2-02-178, 2002 U.S. Dist. Lexis 21996, *4–5.

2

Notwithstanding this balancing approach, "[w]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Caruso*, 569 F.3d at 265 (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

### III.

**Disclosure of Circulator Information.** Plaintiffs first challenge the required disclosure of paid circulators under Ohio Revised Code § 3517.12(B). That section requires ballot committees, such as Plaintiff LetOhioVote.org, to file a report with the Secretary providing, *inter alia*, the name and address of each paid circulator of its initiative or referendum petition together with the amount paid, or to be paid, to each circulator. Ohio Rev. Code § 3517.12(B). Plaintiffs contend that such required disclosure of the payments to circulators is unconstitutional. Plaintiffs do not challenge those portions of Ohio law that require the payors of the circulators to disclose total amounts paid.

The Supreme Court has held that petition circulation is "core political speech" for which First Amendment protection is "at its zenith." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 186–87 (1999) (citing *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988)). Because "'exacting scrutiny' is necessary when compelled disclosure of campaign-related payments is at issue," such regulations must be "substantially related to important governmental interests." *Id.*, 525 U.S. at 202. Analyzing a Colorado statute with disclosure requirements similar to those of § 3517.12(B), the Court found in *Buckley* that "[l]isting paid circulators and their income from circulation forc[es] paid circulators to surrender the anonymity enjoyed by their volunteer counterparts." *Buckley*, 525 U.S. at 204 (quotations omitted). Finding that Colorado's reporting requirements were "no more than tenuously related to the substantial interests [which] disclosure

3

serves," the Court held that, "to the extent that they target paid circulators," the reporting requirements failed the exacting scrutiny to which such regulations are subject. *Id.*, 525 U.S. at 204 (quotations omitted).

Defendants suggest that this case is distinguishable from *Buckley* in that Defendants have demonstrated a history of petition fraud in Ohio. The record in *Buckley* also contained evidence of occasional fraud involving paid circulators, but the Court held that "it does not follow . . . that paid circulators are more likely to commit fraud and gather false signatures than other circulators." *Buckley*, 525 U.S. at 204 n.23 (quotations omitted). This Court finds that *Buckley* is not distinguishable on this basis.

Defendants also offer evidence that the disclosures are necessary in order for other citizens to challenge insufficient or fraudulent petitions, which is also a right guaranteed under Ohio law. Ohio Rev. Code § 3519.16. Defendants contend that challengers typically seek the names and addresses of paid circulators in order to subpoena them to testify at a hearing before the board of elections. As the Supreme Court held in *Buckley*, however, the interest in reaching election law violations is served by the separate requirement that each circulator, paid and unpaid, disclose his or her name and address. *Buckley*, 525 U.S. at 196. As the Supreme Court found in *Buckley*, this Court finds that "[t]he added benefit of revealing the names of paid circulators and amounts paid to each circulator . . . is hardly apparent and has not been demonstrated." *Buckley*, 525 U.S. at 203.

Finally, Defendants contend that *Buckley* was overruled by the Supreme Court's recent decision in *Citizens United v. FEC*, No. 08-205, slip op., 2010 U.S. Lexis 766 (Jan. 21, 2010). This Court finds otherwise, and agrees with Plaintiffs that the *Citizens United* decision dealt with disclosure of the *sources* of independent expenditures supporting or opposing federal *candidates*.

4

In *Buckley*, the Supreme Court emphasized the difference between payments made on behalf of a candidate compared to those made in support of a referendum. The Court noted that "ballot initiatives do not involve the risk of 'quid pro quo' corruption present when money is paid to, or for, candidates." *Buckley*, 525 U.S. at 203 (citing *Meyer v. Grant*, 486 U.S. 414, 427–28 (1988)). *Buckley*, not *Citizens United*, controls this case.

The Court finds that § 3517.12(B) is indistinguishable from the Colorado statute at issue in *Buckley* and is unlikely to survive exacting scrutiny. Plaintiffs have therefore shown that they are likely to succeed on the merits of their First Amendment claim, the most important factor in determining the appropriateness of a temporary restraining order in this case. As for the remaining factors, the Court finds that Plaintiffs will suffer irreparable harm without the injunction, and the interests of the public would be best protected by the enforcement of Plaintiffs' First Amendment rights. Finally, any third-party injury, likely suffered by potential challengers of the petition, is minimized by the fact that any circulator of a petition, paid or unpaid, must disclose his or her name and address on the petition pursuant to section 3519.05 of the Ohio Revised Code. Considering these factors, the Court grants a temporary restraining order as to the enforcement of § 3517.12(B).

**Disclosure of Petitions.** Plaintiffs also challenge the Secretary's practice of making ballot issue petitions available under public records law.

After ballot issue petitions are filed with the Secretary, she must separate the petitions by county and transmit them to the various county boards of election. The boards then ascertain the validity of the signatures on the petitions. Ohio Rev. Code § 3519.15. Ohio law provides that "any elector may file with the board of elections a protest against the board's findings made pursuant to section 3519.15." Ohio Rev. Code § 3519.16.

5

The Secretary has a policy and practice of making copies of ballot issue petitions available to the public upon the filing of a public records request under Ohio law. Plaintiffs assert that this practice violates their First Amendment rights to freedom of speech and association. They contend that the act of signing a petition is "core political speech," the anonymity of which is protected by the First Amendment. Plaintiffs' assertion finds support in a District Court decision, *Doe # 1 v. Reed*, in which that court found that a similar practice by the Washington Secretary of State violated the plaintiffs' rights to anonymous speech and granted a temporary restraining order. *Doe # 1 v. Reed*, No. 09-5456, __ F. Supp. 2d __, 2009 U.S. Dist. Lexis 91745, 2009 WL 2971761 (W.D. Wash. Sept. 10, 2009). The petitions in question sought to repeal through referendum a new law equating same sex civil unions with marriage. The District Court noted that opponents of the petition had publicly stated that they intended to publish the names of petition signers on the internet and had issued a press release encouraging personal and "uncomfortable" conversations with the signers. *Id.*, 2009 U.S. Dist. Lexis 91745 at *12; *see also Doe # 1 v. Reed*, 586 F.3d 671, 675 (9th Cir. 2009).

The decision was thereafter reversed by the Court of Appeals, however, which stayed the district court's order. *Reed*, 586 F.3d 671. The Ninth Circuit found that the petition signers were not engaged in anonymous speech for the following reasons:

> First, the petitions are gathered in public, and there is no showing that the signature-gathering process is performed in a manner designed to protect the confidentiality of those who sign the petition. Second, each petition sheet contains spaces for 20 signatures, exposing each signature to view by up to 19 other signers and any number of potential signers. Third, any reasonable signer knows, or should know, that the petition must be submitted to the State to determine whether the referendum qualifies for the ballot, and the State makes no promise of confidentiality, either statutorily or otherwise. In fact, the PRA provides to the contrary. Fourth, Washington law specifically provides that both proponents and opponents of a referendum petition have the right to observe the State's signature verification and canvassing process.

*Id.*, 586 F.3d at 677.

The Supreme Court granted certiorari and reinstated the District Court's injunction. 558 U.S. ___, No. 09A356 (Oct. 20, 2009), *cert. granted*, 2010 U.S. Lexis 536 (Jan. 15, 2010). The Supreme Court's grant of certiorari does not hold precedential value, however. *See Clinton v. Jones*, 520 U.S. 681, 689 (1997) ("our decision to grant the petition [for certiorari] expressed no judgment concerning the merits of the case"); *Teague v. Lane*, 489 U.S. 288, 296 (1989) ("the 'denial of a writ of certiorari imports no expression of opinion upon the merits of the case'") (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923)). In the absence of the specific timelines governing the referendum process, this Court would simply wait for the decision of the Supreme Court. The time in which the petitions must be certified and any objections lodged will be exhausted, however, before briefing on the issues in the Supreme Court is completed.

This Court agrees with the Court of Appeals for the Ninth Circuit that the act of signing a referendum petition is not anonymous speech. That court's analysis applies equally here.[1] The right of referendum under the Ohio Constitution is conditioned upon the collection of a certain number of signatures of registered voters. Ohio law also provides the right for any voter to challenge the validity of the petitions. Both of those rights hinge upon a public act undertaken by voters. Neither of those rights can be exercised without access to the petitions themselves.

While there are compelling reasons to make the petitions publicly available, and a reasonable signer has no reason to believe the petitions would be private, the Court does not ignore the fact that public disclosure of the petitions could in some circumstances have a chilling effect on the exercise of First Amendment rights. In *NAACP v. Alabama*, the Supreme Court found that the State of Alabama could not require the NAACP to disclose its membership lists.

---

[1] While Ohio law, unlike Washington law, does not provide proponents and opponents of a referendum petition with the right to observe the verification process, Ohio's objection process under § 3519.16 accomplishes essentially the same purpose.

7

The Court found:

> Petitioner has made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility. Under these circumstances, we think it apparent that compelled disclosure of petitioner's Alabama membership is likely to affect adversely the ability of petitioner and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure.

*NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958). In this case, however, Plaintiffs have not alleged that the disclosure of petitions would result in harassment or retaliation of any kind. Without particularized evidence of circumstances chilling the exercise of the right to sign a petition, the Court cannot find that disclosure of the petitions would violate the First Amendment rights of those parties.

The Court finds that Plaintiffs are not likely to succeed on the merits as to the disclosure of referendum petitions, and therefore finds provisionally in favor of Defendants as to that issue. As explained in the Court's prior Order, the Secretary and the Boards of Elections may not disclose the petitions to the public for the ten day period following that Order, in order to permit effective appellate review.

**IT IS SO ORDERED.**

2-10-2010
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**