IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CITIZENS IN CHARGE, et al.,**

    **Plaintiffs,**

v.

**JON HUSTED,**
**OHIO SECRETARY OF STATE,**

    **Defendant.**

**CASE NO. C2-08-1014**
**JUDGE EDMUND A. SARGUS, JR.**
**MAGISTRATE JUDGE E. A. PRESTON DEAVERS**

**CITIZENS IN CHARGE, et al.,**

    **Plaintiffs,**

v.

**JON HUSTED,**
**OHIO SECRETARY OF STATE,**

    **Defendant.**

**CASE NO. C2-10-095**
**JUDGE EDMUND A. SARGUS, JR.**
**MAGISTRATE JUDGE E. A. PRESTON DEAVERS**

### OPINION AND ORDER

This matter is before the Court for consideration of the Motion for Summary Judgment filed by the Defendant Jon Husted, the Ohio Secretary of State (Doc. 30). For the reasons that follow, the Motion for Summary Judgment is **GRANTED**.

**I.**

These two consolidated cases raise constitutional issues related to the referendum process created under Ohio law. Article II § 1c of the Ohio Constitution states in part:

The second aforestated power reserved by the people is designated

> the referendum, and the signatures of six per centum of the electors shall be required upon a petition to order the submission to the electors of the state for their approval or rejection, of any law, section of any law or any item in any law appropriating money passed by the general assembly.

Art. II § 1g, the constitutionality of which the plaintiff's challenge, states in part:

> . . . Upon all initiative, supplementary, and referendum petitions provided for in any of the sections of this article, it shall be necessary to file from each of one-half of the counties of the state, petitions bearing the signatures of not less than one-half of the designated percentage of the electors of such county. . . .

This section requires that parties seeking to place a referendum on the state-wide ballot must obtain valid signatures from at least three percent of the electors in at least forty-four (44) of Ohio's eighty-eight (88) counties. In essence, because the population of the various counties in Ohio varies from a high of 1,280,122 residents in Cuyahoga County to a low of 13,435 in Vinton County, according to the 2010 U.S. Census. Half or more of Ohio's 11,538,514 residents live in the ten (10) largest counties. The plaintiffs contend that Article II, Section 1g violates the one man, one vote rule established in *Baker v. Carr*, 369 U.S. 186 (1962), by diluting the votes of Ohioans residing in larger counties.

Before addressing the merits of this claim, the Court must first determine whether the plaintiffs have standing under Article III of the United States Constitution. If they do not, the Court is without subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

The authority given to the federal courts is both granted and limited by Article III of the United States Constitution. Under this provision, courts may hear "cases or controversies." The same clause which grants such jurisdiction limits the authority of this court

2

to cases involving allegations of an "injury in fact" which is "concrete and particularized" as opposed to disputes which are "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). ". . . [A] plaintiff raising only a generally available grievance about government–claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large–does not state an Article III case or controversy." *Id.* at 573-74.

## II.

The first of these consolidated cases was filed in October of 2008 by Citizens in Charge and Reject 545 Committee. Five days before the suit was filed, however, the Secretary of State certified that a referendum on House Bill 545, concerning the regulation of pay-day lending practices, should be placed upon the November 4, 2008 statewide ballot. Notwithstanding the challenged restrictions of Art. II § 1g of the Ohio Constitution, the plaintiffs, in Case No. 2:08-cv-1014, were successful in gaining ballot access for the referendum.

The second consolidated case was filed on February 3, 2010 by Citizens in Charge, several John Does, LetOhioVote (a ballot issue committee) and two individuals, Thomas Brinkman, Jr. and Gene Pierce. The plaintiffs were engaged in circulating referendum petitions seeking to repeal video lottery legislation passed by the Ohio General Assembly. On June 28, 2010, the Secretary of State certified the petitions and the matter was set for placement on the November 2010 ballot. Subsequently, on June 28, 2010, LetOhioVote gave formal notice to the Secretary of State of its intention to withdraw the issue from the ballot.

The parties have helpfully narrowed the issues by way of a stipulation (Doc. 33) which dismissed all counts in Case No. 2:08-cv-1014 and Counts Two and Four in Case No.

2:10-cv-095. Additionally, the Court has previously permanently enjoined the enforcement of O.R.C. § 3517.12(B), which was the subject of Count Three in Case 2:10-cv-095. The sole issue remaining involves the constitutional challenge to the forty-four (44) county requirement in Art. II § 1g of the Ohio Constitution.

The parties do not disagree with the following facts, although each draws very different legal conclusions. First, the plaintiffs are not presently circulating any proposed ballot issues which could be effected or impaired by Art. II § 1g of the Ohio Constitution. Second, the plaintiffs do not contend that any current petitions which they circulated may be legally impacted by the challenged state constitutional provision. Third, the individual plaintiffs, Thomas Brinkman, Jr. and Gene Pierce, reside in two of Ohio's most populated counties. Fourth, while no particular petition drive involving the plaintiffs is underway, the challenged provisions of the Ohio Constitution are in effect and, according to the plaintiffs, dilute the strength of their votes.

The essence of the standing issue is reducible to a basic question. Is the claimed violation of the United States Constitution an infringement on the fundamental right to vote, or is the claim a challenge to a state's regulation of the electoral process? The answer to the question determines the issue of standing.

As plaintiffs' correctly assert, beginning with *Baker v. Carr*, federal courts have recognized that any voter placed in a district with diminished voting strength, in violation of the one man, one vote doctrine, has standing to challenge the apportionment. As noted in *Baker*, voters in such district have "a plain, direct and adequate interest in maintaining the effectiveness of their votes." *Id.* at 208. *See also Gray v. Sanders*, 372 U.S. 368, 375 (1963); *Dep't of Commerce v. U. S. House of Representatives*, 525 U.S. 316 (1999).

4

In these cases and others, however, the broad standing accorded to individual voters stems from the fact that a voter's fundamental constitutional right to vote is directly diminished by malapportioned voting district. In the case of a statewide referendum procedural rule, the interests at stake are different. As noted in *John Doe No. 1 v. Reed*, 130 S. Ct. 2811, 2827-28 (Justice Sotomayor concurring):

> In assessing the countervailing interests at stake in this case, we must be mindful of the character of initiatives and referenda. These mechanisms of direct democracy are not compelled by the Federal Constitution. It is instead up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action. States enjoy "considerable leeway" to choose the subjects that are eligible for placement on the ballot and to specify the requirements for obtaining ballot access (*e.g.*, the number of signatures required, the time for submission, and the method of verification). *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 191, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). As the Court properly recognizes, each of these structural decisions "inevitably affects–at least to some degree–the individual's right" to speak about political issues and "to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).

In a similar vein involving the initiative process, a mirror image of a referendum, the Court of Appeals for the Sixth Circuit has held in *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 296 (6th Cir. 1993):

> The Supreme Court has held in a number of opinions that the right to vote is a fundamental right, *see, e.g., Kramer v. Union Free School Dist.*, 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969); *Reynolds v. Sims*, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964); however, the plaintiffs do not cite to us nor does our research identify any decision of the Supreme Court or a lower federal court holding that signing a petition to initiate legislation is entitled to the same protection as exercising

the right to vote.[1]

None of this indicates that one man, one vote principles are not applicable to the referendum process. What the cases do mean is that, unlike apportionment cases, the referendum (or initiative) process implicates First Amendment political speech and Fourteenth Amendment equal protection viewed in the context of the states' "significant flexibility in implementing their own voting systems." *John Doe No. 1 v. Reed*, 130 S. Ct. at 2818. Standing, in this contest, does not simply reside in a voter who resides in a county with arguably diluted voting strength. The expansive view of standing articulated in *Baker v. Carr* is premised upon the direct infringement of a fundamental right to vote imposed upon each residence of a misdrawn political district. No such individualized harm is visited by a state referendum procedure.

Instead, this Court turns to the well established law of standing that requires a plaintiff to demonstrate that 1) he or she has suffered "a concrete and particularized injury;" (2) the injury relates to conduct of the defendant; (3) a judgment for the plaintiff would remedy the injury. *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 608 (6th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). A plaintiff does not have standing, unless the harm complained of is "distinct and palpable, and not abstract or conjectural or hypothetical." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 276, 280 (6th Cir. 1997).

The individual plaintiffs aver that they have signed referenda petitions in the past, they are qualified to vote in a large Ohio county and they desire to sign future referenda petitions

---

[1] Plaintiffs cite to several cases from the Ninth Circuit finding no distinction between voting on candidates or voting on an initiative or referendum. The Ninth Circuit holdings in *Lemons v. Bradbury*, 538 F.3d 1098, 1102 (9th Cir. 2008) and *Idaho Coal. United for Bears v. Cenarrusa*, 342 F.3d 1073, 1077 (9th Cir. 2003) cannot be reconciled with *Taxpayers United for Assessment Cuts, supra*, a published, binding decision of the Sixth Circuit.

6

in the future. They do not allege that they have filed referenda petitions with the Secretary of State, that they have been unable to gather signatures in a large number of Ohio counties, or that the challenged provision of the Ohio Constitution has in any way affected their ability to place a referendum on the statewide ballot.

This Court concludes that the plaintiffs have not alleged concrete or particularized injury, whether actual or imminent, sufficient to demonstrate a "case or controversy" as required by Article III of the Constitution before this Court may exercise jurisdiction.

III.

Based upon the foregoing, this Court finds that it lacks subject matter jurisdiction for proceeding with the remaining claim in this case. This consolidated case is **DISMISSED**.

**IT IS SO ORDERED.**

8-19-2011
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

7